**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

Case No. _____

JOVELYN ESCALO,

          Plaintiff,

vs.

STEINER TRAINING LTD., a subsidiary
of Steiner Leisure Ltd.,

          Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOVELYN ESCALO, sues Defendant, STEINER TRAINING LTD., a subsidiary of Steiner Leisure Ltd., and in support thereof alleges:

### GENERAL ALLEGATIONS

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Furthermore, the Defendant has a forum selection clause in its employment agreement with the Plaintiff mandating suit in this Court.

2. The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. § 30104 and/or the General Maritime Law of the United States.

3. At all times material hereto, Defendant was the Jones Act employer of the Plaintiff.

4. At all times material hereto, the Plaintiff was acting within the course and scope of her employment with Defendant as a seaman, notably a massage therapist in spa which Defendant operated aboard the cruise ship vessel *Allure of the Seas*.

5.    On or about March 22, 2012, Plaintiff experienced pain in and/or about her stomach.

6.    Plaintiff received treatment from the ship board physician for the pain.

7.    On or about March 28, 2012, the ship board physician disembarked the Plaintiff to Cozumel Medical Center in Cozumel, Mexico, with an apparent diagnosis of cholelithiasis.

8.    On or about March 31, 2012, a surgeon at Cozumel Medical Center perform a laparoscopic cholecystectomy on Plaintiff.

9.    The surgeon performing the operation perforated Plaintiff's gallbladder, facilitating the spillage of bile and/or gallstones into Plaintiff's peritoneal cavity, and causing severe complications, inclusive of inflammatory reaction, abscesses and infection.

10.   The surgeon and other medical personnel at the Cozumel Medical Center failed to recognize and manage the complications appropriately, causing worsening conditions, necessitating multiple surgeries being performed on the Plaintiff having deleterious effects, some permanent.

## COUNT I
## JONES ACT NEGLIGENCE – FAILURE TO PROVIDE PROMPT AND ADEQUATE CURE

11.   Plaintiff adopts and re-alleges paragraphs 1 through 10 as if fully set forth herein, and further alleges:

12.   Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendant until she is declared to have reached maximum possible cure.

13.   Maintenance and cure provides a seaman, who is injured or ill while in the service of the vessel, medical care and treatment, and the means of maintaining him or herself, while recuperating.

14.   From the earliest times, maritime nations have recognized that unique hazards, emphasized

by unusual tenure and control, attend the work of seamen. The physical risks created by natural elements and the limitations of human adaptability to work at sea enlarge the narrower and more strictly occupational hazards of sailing and operating vessels. And the restrictions which accompany living aboard ship for long periods at a time combine with the constant shuttling between unfamiliar ports to deprive the seaman of the comforts and opportunities for leisure, essential for living and working, that accompany most land occupations. Furthermore, the seaman's unusual subjection to authority adds the weight of what would be involuntary servitude for others to these extraordinary hazards and limitations of ship life.

15.     Accordingly, with the combined object of encouraging marine commerce and assuring the well-being of seamen, maritime nations uniformly have imposed broad responsibilities for their health and safety upon Jones Act employers, such as the Defendant.

16.     Among the most pervasive incidents of the responsibility anciently imposed upon a Jones Act employer for the health and security of sailors, was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service. In the United States, this obligation has been recognized consistently as an implied provision in contracts of maritime employment. Created thus with the contract of employment, the liability in no sense is predicated on the fault or negligence of the employer, like the Defendant.

17.     A seaman, like Plaintiff, is entitled to maintenance and cure until he or she reaches maximum possible cure, irrespective of whether the illness or injuries were received by negligence or accident.

18.     Plaintiff in this case was, as indicated previously, "in the service of the ship" when she suffered her illness.

19.     Consequently, she has a right to receive maintenance and cure until maximum possible cure.

20.     At all times material, Defendant was a Jones Act Employer and had a fundamental absolute and non-delegable duty under the Jones Act to make provision to Plaintiff of prompt and adequate maintenance and cure in a non-negligent manner.

21.     Defendant is liable under the Jones Act in damages for harm resulting in whole or in part from the negligent failure of its officers, agents, or employees to make provision of prompt and adequate maintenance and cure.  A simple showing of some negligence on the part of the employer which played any part, even the slightest, in producing harm to the Plaintiff, creates a jury question on the issue of negligence.

22.     An employer, like the Defendant, is liable if it fails to provide or pay a seaman prompt and adequate maintenance or fails to provide prompt and adequate cure.

23.     An employer, like the Defendant, is liable for even greater damages if its failure to provide or pay a seaman prompt and adequate maintenance or failure to provide prompt and adequate cure is willful, arbitrary, capricious, and in callous disregard of the rights of a seaman.

24.     Furthermore, an employer, like the Defendant, is liable if there was negligence in the ministration – essentially the act of supplying or furnishing – of maintenance and cure. There are, indeed, two alternative ways in which an employer is liable for negligence in the ministration of maintenance and cure:  (1) If the Defendant was negligent in selecting and/or relying upon one or more of the physicians and health care providers who treated the seaman; or (2) one or more of the physicians and health care providers in who treated the seaman was/were negligent in the treatment of the seaman.

25.     Relative to the second of these ways, an employer is liable for acts of any of said physicians and health care providers if any of said physicians or health care providers did not exercise

the degree of care and skill of the averaged qualified practitioner of the art and science of medicine.

26.     Here, Defendant was negligent in selecting and/or relying upon one or more of the physicians and/or health care providers who treated the seaman at the aforesaid Cozumel Medical Center, when one or more of them:

    A.     were incompetent, inexperienced, and/or unable to carry out their duties as physicians because of insufficient training; and/or

    B.     not current with appropriate medical standards; and/or

    C.     did not keep up with continuing medical education, seminars, and/or courses which would have apprised them of current prevailing standards.

27.     Alternatively, Defendant's failure in selecting and/or relying upon one or more of the physicians and health care providers who treated the seaman at the aforesaid Cozumel Medical Center was arbitrary, capricious, and in callous disregard of the Plaintiff's rights as a seaman.

28.     Additionally or alternatively, the aforementioned surgeon at Cozumel Medical Center who operated on the Plaintiff was negligent and/or grossly negligent in the treatment of Plaintiff, by, at minimum, not exercising the degree of care and skill of the averaged qualified practitioner of the art and science of medicine, including, without limitation, as follows:

    A.     by negligently and/or grossly negligently perforating Plaintiff's gallbladder, facilitating the spillage of bile and/or gallstones into Plaintiff's peritoneal cavity, and causing severe complications, inclusive of inflammatory reaction, abscesses and infection; and/or

B.    by negligently and/or grossly negligently failing to recognize and manage the complications appropriately, causing worsening conditions, necessitating multiple surgeries being performed on the Plaintiff having deleterious effects, some permanent; and/or

C.    by negligently and/or grossly negligently failing to possess the requisite knowledge appropriate to practice in the field, or to refer the patient to someone who did possess that knowledge; and/or

D.    by negligently and/or grossly negligently failing to possess the requisite knowledge regarding appropriate measures to take in connection with Plaintiff's care; and/or

E.    by negligently and/or grossly negligently failing to properly interpret diagnostic tests, or to recommend that further tests be performed based on the results of the tests performed; and/or

F.    by negligently and/or grossly negligently interpreting diagnostic tests in an improper manner; and/or

G.    by negligently and/or grossly negligently failing to follow appropriate guidelines concerning care and supervision of a woman in Plaintiff's condition; and/or

H.    by negligently and/or grossly negligently failing to adequately warn Plaintiff of the danger attendant to his care and her condition; and/or

I.    by negligently and/or grossly negligently failing to provide adequate care to Plaintiff; and/or

J.    by negligently and/or grossly negligently failing to provide and/or recommend adequate follow-up care to Plaintiff; and/or

K.     by negligently and/or grossly negligently failing to consult with other physicians or health care providers in regard to the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

L.     by negligently and/or grossly negligently failing to properly diagnose and treat Plaintiff's condition; and/or

M.     by negligently and/or grossly negligently failing to refer Plaintiff to an appropriate specialist or facility for testing or evaluation; and/or

N.     by negligently and/or grossly negligently failing to prescribe, order, and/or perform indicated diagnostic procedures that would have revealed Plaintiff's true condition and dictated a different course of care and treatment for Plaintiff's; and/or

O.     by negligently and/or grossly negligently failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures to prevent the condition from remaining untreated and allowing it to worsen; and/or

P.     by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

29.     Additionally or alternatively, one or more of the other physicians and health care providers who treated the Plaintiff, besides the aforementioned surgeon at Cozumel Medical Center who operated on the Plaintiff, was/were negligent or grossly so in the treatment of Plaintiff, by, at minimum, not exercising the degree of care and skill of the averaged qualified practitioner of the art and science of medicine, including, without limitation, as follows:

A.     by negligently and/or grossly negligently perforating Plaintiff's gallbladder, facilitating the spillage of bile and/or gallstones into Plaintiff's peritoneal cavity, and

causing severe complications, inclusive of inflammatory reaction, abscesses and infection; and/or

B.   by negligently and/or grossly negligently failing to recognize and manage the complications appropriately, causing worsening conditions, necessitating multiple surgeries being performed on the Plaintiff having deleterious effects, some permanent; and/or

C.   by negligently and/or grossly negligently failing to possess the requisite knowledge appropriate to practice in the field, or to refer the patient to someone who did possess that knowledge; and/or

D.   by negligently and/or grossly negligently failing to possess the requisite knowledge regarding appropriate measures to take in connection with Plaintiff's care; and/or

E.   by negligently and/or grossly negligently failing to properly interpret diagnostic tests, or to recommend that further tests be performed based on the results of the tests performed; and/or

F.   by negligently and/or grossly negligently interpreting diagnostic tests in an improper manner; and/or

G.   by negligently and/or grossly negligently failing to follow appropriate guidelines concerning care and supervision of a woman in Plaintiff's condition; and/or

H.   by negligently and/or grossly negligently failing to adequately warn Plaintiff of the danger attendant to his care and her condition; and/or

I.   by negligently and/or grossly negligently failing to provide adequate care to Plaintiff; and/or

J.      by negligently and/or grossly negligently failing to provide and/or recommend adequate follow-up care to Plaintiff; and/or

K.      by negligently and/or grossly negligently failing to consult with other physicians or health care providers in regard to the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

L.      by negligently and/or grossly negligently failing to properly diagnose and treat Plaintiff's condition; and/or

M.      by negligently and/or grossly negligently failing to refer Plaintiff to an appropriate specialist or facility for testing or evaluation; and/or

N.      by negligently and/or grossly negligently failing to prescribe, order, and/or perform indicated diagnostic procedures that would have revealed Plaintiff's true condition and dictated a different course of care and treatment for Plaintiff's; and/or

O.      by negligently and/or grossly negligently failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures to prevent the condition from remaining untreated and allowing it to worsen; and/or

P.      by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

30.    As a direct and proximate result, Plaintiff suffered harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or  nursing care and/or treatment, loss of earnings, loss of ability to earn money and/or aggravation of a previously existing condition. One or more of the losses are permanent

and/or continuing, and Plaintiff will suffer the loss(es) in the future.

31.     WHEREFORE, the Plaintiff demands judgment under the Jones Act against the Defendant, together with any and all compensatory damages, punitive damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

**COUNT II**
**U.S. GENERAL MARITIME LAW CLAIM FOR FAILURE TO PROVIDE PROMPT AND ADEQUATE MAINTENANCE AND CURE**

32.     Plaintiff adopts and re-alleges paragraphs 1 through 10 as if fully set forth herein, and further alleges:

33.     Under the U.S. General Maritime Law, Plaintiff, as a seaman, is entitled to recover maintenance and cure from Defendant until she is declared to have reached maximum possible cure.

34.     Maintenance and cure provides a seaman, who is injured or ill while in the service of the vessel, medical care and treatment, and the means of maintaining him or herself, while recuperating.

35.     From the earliest times, maritime nations have recognized that unique hazards, emphasized by unusual tenure and control, attend the work of seamen.  The physical risks created by natural elements and the limitations of human adaptability to work at sea enlarge the narrower and more strictly occupational hazards of sailing and operating vessels.  And the restrictions which accompany living aboard ship for long periods at a time combine with the constant shuttling between unfamiliar ports to deprive the seaman of the comforts and opportunities for leisure, essential for living and working, that accompany most land

occupations.  Furthermore, the seaman's unusual subjection to authority adds the weight of what would be involuntary servitude for others to these extraordinary hazards and limitations of ship life.

36.     Accordingly, with the combined object of encouraging marine commerce and assuring the well-being of seamen, maritime nations uniformly have imposed broad responsibilities for their health and safety upon Jones Act employers, such as the Defendant.

37.     Among the most pervasive incidents of the responsibility anciently imposed upon a Jones Act employer for the health and security of sailors, was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service.  In the United States, this obligation has been recognized consistently as an implied provision in contracts of maritime employment.  Created thus with the contract of employment, the liability in no sense is predicated on the fault or negligence of the employer, like the Defendant.

38.     A seaman, like Plaintiff, is entitled to maintenance and cure until he or she reaches maximum possible cure, irrespective of whether the illness or injuries were received by negligence or accident.

39.     Plaintiff in this case was, as indicated previously, "in the service of the ship" when she suffered her illness.

40.     Consequently, she has a right to receive maintenance and cure until maximum possible cure.

41.     At all times material, Defendant was a Jones Act Employer and had a fundamental absolute and non-delegable duty under the U.S. General Maritime Law to make provision to Plaintiff of prompt and adequate maintenance and cure in a non-negligent manner.

42.     Defendant is liable under the U.S. General Maritime Law in damages for harm resulting in whole or in part from the negligent failure of its officers, agents, or employees to make

provision of prompt and adequate maintenance and cure.  A simple showing of some negligence on the part of the employer which played any part, even the slightest, in producing harm to the Plaintiff, creates a jury question on the issue of negligence.

43.    An employer, like the Defendant, is liable if it fails to provide or pay a seaman prompt and adequate maintenance or fails to provide prompt and adequate cure.

44.    An employer, like the Defendant, is liable for even greater damages if its failure to provide or pay a seaman prompt and adequate maintenance or failure to provide prompt and adequate cure is willful, arbitrary, capricious, and in callous disregard of the rights of a seaman.

45.    Furthermore, an employer, like the Defendant, is liable if there was negligence in the ministration – essentially the act of supplying or furnishing – of maintenance and cure. There are, indeed, two alternative ways in which an employer is liable for negligence in the ministration of maintenance and cure:  (1) If the Defendant was negligent in selecting and/or relying upon one or more of the physicians and health care providers who treated the seaman; or (2) one or more of the physicians and health care providers in who treated the seaman was/were negligent in the treatment of the seaman.

46.    Relative to the second of these ways, an employer is liable for acts of any of said physicians and health care providers if any of said physicians or health care providers did not exercise the degree of care and skill of the averaged qualified practitioner of the art and science of medicine.

47.    Here, Defendant was negligent in selecting and/or relying upon one or more of the physicians and/or health care providers who treated the seaman at the aforesaid Cozumel Medical Center, when one or more of them:

       A.     were incompetent, inexperienced, and/or unable to carry out their duties as physicians

because of insufficient training; and/or

B.      not current with appropriate medical standards; and/or

C.      did not keep up with continuing medical education, seminars, and/or courses which would have apprised them of current prevailing standards.

48.   Alternatively, Defendant's failure in selecting and/or relying upon one or more of the physicians and health care providers who treated the seaman at the aforesaid Cozumel Medical Center was arbitrary, capricious, and in callous disregard of the Plaintiff's rights as a seaman.

49.   Additionally or alternatively, the aforementioned surgeon at Cozumel Medical Center who operated on the Plaintiff was negligent and/or grossly negligent in the treatment of Plaintiff, by, at minimum, not exercising the degree of care and skill of the averaged qualified practitioner of the art and science of medicine, including, without limitation, as follows:

A.      by negligently and/or grossly negligently perforating Plaintiff's gallbladder, facilitating the spillage of bile and/or gallstones into Plaintiff's peritoneal cavity, and causing severe complications, inclusive of inflammatory reaction, abscesses and infection; and/or

B.      by negligently and/or grossly negligently failing to recognize and manage the complications appropriately, causing worsening conditions, necessitating multiple surgeries being performed on the Plaintiff having deleterious effects, some permanent; and/or

C.      by negligently and/or grossly negligently failing to possess the requisite knowledge appropriate to practice in the field, or to refer the patient to someone who did possess that knowledge; and/or

D.    by negligently and/or grossly negligently failing to possess the requisite knowledge regarding appropriate measures to take in connection with Plaintiff's care; and/or

E.    by negligently and/or grossly negligently failing to properly interpret diagnostic tests, or to recommend that further tests be performed based on the results of the tests performed; and/or

F.    by negligently and/or grossly negligently interpreting diagnostic tests in an improper manner; and/or

G.    by negligently and/or grossly negligently failing to follow appropriate guidelines concerning care and supervision of a woman in Plaintiff's condition; and/or

H.    by negligently and/or grossly negligently failing to adequately warn Plaintiff of the danger attendant to his care and her condition; and/or

I.    by negligently and/or grossly negligently failing to provide adequate care to Plaintiff; and/or

J.    by negligently and/or grossly negligently failing to provide and/or recommend adequate follow-up care to Plaintiff; and/or

K.    by negligently and/or grossly negligently failing to consult with other physicians or health care providers in regard to the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

L.    by negligently and/or grossly negligently failing to properly diagnose and treat Plaintiff's condition; and/or

M.    by negligently and/or grossly negligently failing to refer Plaintiff to an appropriate specialist or facility for testing or evaluation; and/or

N.   by negligently and/or grossly negligently failing to prescribe, order, and/or perform indicated diagnostic procedures that would have revealed Plaintiff's true condition and dictated a different course of care and treatment for Plaintiff's; and/or

O.   by negligently and/or grossly negligently failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures to prevent the condition from remaining untreated and allowing it to worsen; and/or

P.   by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

50.   Additionally or alternatively, one or more of the other physicians and health care providers who treated the Plaintiff, besides the aforementioned surgeon at Cozumel Medical Center who operated on the Plaintiff, was/were negligent or grossly so in the treatment of Plaintiff, by, at minimum, not exercising the degree of care and skill of the averaged qualified practitioner of the art and science of medicine, including, without limitation, as follows:

A.   by negligently and/or grossly negligently perforating Plaintiff's gallbladder, facilitating the spillage of bile and/or gallstones into Plaintiff's peritoneal cavity, and causing severe complications, inclusive of inflammatory reaction, abscesses and infection; and/or

B.   by negligently and/or grossly negligently failing to recognize and manage the complications appropriately, causing worsening conditions, necessitating multiple surgeries being performed on the Plaintiff having deleterious effects, some permanent; and/or

C.     by negligently and/or grossly negligently failing to possess the requisite knowledge appropriate to practice in the field, or to refer the patient to someone who did possess that knowledge; and/or

D.     by negligently and/or grossly negligently failing to possess the requisite knowledge regarding appropriate measures to take in connection with Plaintiff's care; and/or

E.     by negligently and/or grossly negligently failing to properly interpret diagnostic tests, or to recommend that further tests be performed based on the results of the tests performed; and/or

F.     by negligently and/or grossly negligently interpreting diagnostic tests in an improper manner; and/or

G.     by negligently and/or grossly negligently failing to follow appropriate guidelines concerning care and supervision of a woman in Plaintiff's condition; and/or

H.     by negligently and/or grossly negligently failing to adequately warn Plaintiff of the danger attendant to his care and her condition; and/or

I.     by negligently and/or grossly negligently failing to provide adequate care to Plaintiff; and/or

J.     by negligently and/or grossly negligently failing to provide and/or recommend adequate follow-up care to Plaintiff; and/or

K.     by negligently and/or grossly negligently failing to consult with other physicians or health care providers in regard to the care and treatment rendered to Plaintiff, including as to appropriate evaluation and diagnosis; and/or

L.     by negligently and/or grossly negligently failing to properly diagnose and treat Plaintiff's condition; and/or

M.   by negligently and/or grossly negligently failing to refer Plaintiff to an appropriate specialist or facility for testing or evaluation; and/or

N.   by negligently and/or grossly negligently failing to prescribe, order, and/or perform indicated diagnostic procedures that would have revealed Plaintiff's true condition and dictated a different course of care and treatment for Plaintiff's; and/or

O.   by negligently and/or grossly negligently failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures to prevent the condition from remaining untreated and allowing it to worsen; and/or

P.   by negligently and/or grossly negligently failing to follow appropriate guidelines for referral of patients to appropriate medical specialists for examination and testing.

51.   As a direct and proximate result, Plaintiff suffered harm, including, without limitation, bodily injury, pain and suffering, disability, disfigurement, emotional distress, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and/or nursing care and/or treatment, loss of earnings, loss of ability to earn money and/or aggravation of a previously existing condition. One or more of the losses are permanent and/or continuing, and Plaintiff will suffer the loss(es) in the future.

52.   WHEREFORE, the Plaintiff demands judgment under the U.S. General Maritime Law against the Defendant, together with any and all compensatory damages, punitive damages, statutory interest as permitted, pre-judgment interest as permitted, attorney's fees as permitted, costs as permitted, trial by jury for all issues so triable, and any other relief that this Court deems proper.

Respectfully submitted,

**Crewmember & Maritime Advocacy Center**
66 West Flagler Street, Suite 200
Miami, Florida 33131
Telephone:  (305) 374-9099
Facsimile:  (305) 374-5099
**Julio J. Ayala, Esq.**
Florida Bar No. 0977070
crewesq@crewadvocacy.com

- AND -

**BRILL RINALDI GARCIA, THE LAW FIRM**
17150 Royal Palm Blvd, Suite 2
Weston, Florida 33326
Telephone:  (954) 876-4344
Facsimile:  (954) 384-6226
**David W. Brill, Esq.**
Florida Bar No. 0959560
david@brglawfirm.com
**Joseph J. Rinaldi, Jr., Esq.**
Florida Bar No. 0581941
joe@brglawfirm.com
**Juan M. Garcia, Jr., Esq.**
Florida Bar No. 15258
juan@brglawfirm.com
**Najla A. Bubtana, Esq.**
Florida Bar No.: 100903
najla@brglawfirm.com


*s/ David W. Brill*
David W. Brill, Esq.